Good morning, Your Honors. May it please the Court, Stephen Braselton on behalf of Petitioner Cedro Ortiz-Sanchez. The issue before this Court in this case, Your Honor, is whether the Board of Immigration Appeals erred in holding that it did not have jurisdiction to consider a collateral attack by Mr. Ortiz in subsequent removal proceedings, collaterally attacking the deportation proceedings which resulted in the loss of his permanent residence. The Board held that it did not have jurisdiction to consider Mr. Ortiz's collateral attack, citing 8 CFR 1003.2d, an immigration regulation which provides that a motion to reopen or reconsider was considered subsequent to the alien's departure from the United States. In so holding, the Board erred for a number of reasons. First, Mr. Ortiz had not filed a motion to reopen or reconsider. He was trying to assert a collateral attack as an affirmative defense to the current removal proceedings. Can you do that? That's the issue before the Court. Our position is that... I'm sorry, which case, Your Honor? The Court did so hold, however... 1980 case, yes, Your Honor. I believe you are, Your Honor, except that the Court, subsequent to that, in Areola, Areola, has held that due process requires that there has to be some way for an alien to challenge a prior deportation proceeding where he can show that there has been a gross miscarriage of justice. But here, the prior removal isn't a basis for the removal in this case. Your client was not put on expedited proceedings. That's correct. So, this is not a situation where the earlier order was resuscitated. Your client committed a new and independent offense of coming into the country without inspection. It had nothing to do with the earlier removal. The earlier removal was not used as a predicate for the current removal. Now, if he had been put on expedited proceedings, then maybe Areola would help you. But the whole idea was there that... essentially, the reinstatement resuscitated the earlier removal. But this didn't happen here. Your client got a whole new removal proceeding. The earlier removal was not a predicate. I don't see... I mean, it seems to me Ramirez-Juarez is directly on point and controlling. I don't know how you get around it. The only way around it, Your Honor, is a due process clause of the United States Constitution that... Well, what's due process about the fact that we have a law that says once you've been removed, you've got to stop at the border and you've got to get permission from the Attorney General to come in. He was removed. There's no doubt about that. You've got... He didn't stop at the border. He didn't get permission to come in. Where's the... Where's the... due process violation? The due process violation is that there would be no other way for him to come in if he stopped at the border. Some people can't come in. That's just the way it is. I mean, but in fact, in your client's case, he could. He could ask the Attorney General for permission. He couldn't, Your Honor. He would be inadmissible for a number of different reasons. First of all, if he showed up at the border, as the government suggests that he should do, the government could remove him. Well, I don't physically mean at the border. I mean, you know, it's somewhere from outside the country. He needs to go to a consulate and make an application for the Attorney General to permit him to come in. The Attorney General has broad discretion. He can exercise it, and if the Attorney General lets him in, that's fine. If not, he can't just decide he's going to come in anyway. Well, he wouldn't... The Attorney General wouldn't have the discretion under the Immigration and Nationality Act to give him permission to reenter because he's not available. He's inadmissible because of his criminal conviction, which led to his deportation, and because of the statute and the waivers that are strictly narrowly confined, he's not available for any of those waivers. So his one chance to remain in the United States was the original deportation proceeding. So could he have attacked the original deportation proceeding and raised his due process arguments without having incurred another violation by his illegal reentry? He could have tried. I don't think he would have been successful because if, say, he presented himself at the border and said, I want to collaterally attack my deportation proceedings, the government can say, well, you've arrived without a visa. You're inadmissible and deportable under Section 212A.7. Here they charge him with 212A.6, having entered without inspection. So it's a half-dozen of one. But he doesn't have to be in this country to challenge the earlier proceedings. I mean, he could have sought to set aside the earlier proceedings on St. Cyr accounts from abroad. He does not have to come into this country to actually do the attack. You're saying he could have filed a lawsuit, say, in federal district court, challenging the deportation? Either that or gone before the BIA and sought to set aside the earlier order. I'm sorry, not to set aside, to reopen the earlier order on St. Cyr accounts. He could have tried to do that, and he could have done it without coming in the country. He's too late to file a motion to reopen under the regulations that were promulgated. And the BIA said it's without jurisdiction. Well, let's see. The order was in 1997? 1998. And St. Cyr came down in what, 2001? 2001. 2001, I believe. So if in 2001 and a half, or 2002 or something, he had moved the BIA to reopen the 98 proceedings, citing extraordinary circumstances, the Supreme Court's somewhat unanticipated, or widely unanticipated opinion in St. Cyr, the board would have had discretion to reopen. I mean, they might not have done it, but they might have. By the time that he discovered that something could have been done for him, it was too late under the regulations. He didn't believe that that was an avenue that could have been pursued viably. Do you want to save your last few minutes for the final? Yes. May it please the Court. Kristen Edison for the Attorney General. As Your Honor has pointed out, this case arises simply from Mr. Ortiz's unlawful entry into the United States in June 2002. Mr. Ortiz is relying on a claim of ineffective assistance of counsel in order to erase his independent decisions to illegally reenter the country. However, his former counsel's alleged ineffective assistance in no way impacts the order under consideration. Well, if his counsel had been brilliant, he could have appealed the BIA's decision, raised the St. Cyr argument three years early, gotten the Supreme Court, and then we'd no longer have the St. Cyr doctrine, we'd have the Ortiz-Sanchez doctrine. But as it happened, I guess that's not the test, is it? No, Your Honor. It's the government's position in any event that the Board correctly construed Mr. Ortiz's ineffective assistance of counsel claim, which he calls a collateral attack as a motion to reopen, which was barred by regulation. And in any event, as Your Honor had pointed out, Mr. Ortiz could have raised this challenge much earlier and without incurring subsequent immigration violations. Mr. Ortiz could have particularly raised this claim during his 2001 criminal proceedings. There was an avenue to do that set forth at 8 U.S.C. Section 1326D, and instead Petitioner pled guilty to reentry and didn't pursue those arguments. Now, if he had set aside – I mean, the reason he could attack it there is because you can collateral attack, of course, in a criminal case. That's correct, Your Honor. And if he had done that, that would have set aside the proceedings for all purposes, criminal and civil, if he had succeeded. I don't know the answer to that. Or is there sort of a limited setting aside of the proceedings for purposes of the criminal proceedings? Or does it essentially nullify the earlier proceedings altogether for all purposes? Well, under that provision – I believe that provision – Do you understand the difference? Yes, I think so. One of them is that it will not base criminal liability on this proceeding. So we'll set it aside in the sense that we will not consider it as a part of criminal liability. The other one is to say we wipe it out altogether. I'm not quite exactly sure. I just want to make sure I understand Your Honor's point. You could challenge the earlier proceeding in a criminal case. Right, right under that provision. You can't do it in a civil case. And you're saying he could have raised it in the criminal case and challenged it there. I'm just not sure what the effect would be of a successful challenge in a criminal case. Would that simply be a determination that you can't use it as a predicate in this criminal case? Or would it be a setting aside of the proceeding for all purposes, including civil proceedings later on? Actually, I'm not sure that I know the answer to that question, Your Honor. So I'd be happy to respond in writing. Well, it may not matter. I thought you might know. Okay. I just don't want to misrepresent. Because you have suggested he could have done it then. And I think the implication was he could have done it then, and he had done it then. He'd have the benefit of it now. It may be all right. I don't know. Right. I think the point just is simply that it's hard for him to argue this now, after he'd had several opportunities in proceedings long before this one, Your Honor. Are you saying that he can't do it anywhere now? Yes, for a number of reasons. Well, first and primarily is that, as I stated before, that this claim, which had to be construed as a motion to reopen, was barred by regulation because Mr. Ortiz had been removed. And then even assuming that he could convince the court to nullify this prior order, this case really is about his entry without inspection in 2001, and he's removable on that charge. No, that wasn't the question. The question is, can he attack the prior unconstitutional – he has claimed that his prior deportation was unconstitutional. Can he attack the prior deportation by any procedure now? Well, Your Honor, the government maintains that these proceedings were not constitutionally defective. And as we've discussed a bit before – Assume they are. Assume they are. Is there a procedure by which he can attack them now? Or do you now say, ah-ha, we won, we deported him unconstitutionally, so that's it, he's stuck for life? Well, the original deportation order still stands there. His case was closed. His original removal order, which was on the basis of this conviction, was still valid. It's the government's position that he can't collaterally attack – Well, I think the government's position is that there's no point in collaterally attacking him if he could, because setting aside the earlier deportation order wouldn't do him any good. He's being removed here for illegal re-entry without inspection. Right, that's correct, Your Honor. But that's a different question. The question is, forget the fact that he entered illegally. Let me ask a theoretical question. There was a suggestion that if he'd stayed in Mexico – I think it came from Judge Kuczynski – that if he stayed in Mexico, he could attack his deportation from there. But I was asking, is that correct? Your Honor, if it's okay, I'd feel more comfortable responding and writing to that question. I want to make sure that I – if that's acceptable. But I think that this case can be decided in a much more narrow context, as Your Honor had pointed out, that in any event, he's removable on this entry without inspection charge, and that attacking the order would make no difference. All right. Will it take three minutes back for Mr. Gonzalez? I'm sorry? Will it take three minutes back for Mr. Gonzalez? Certainly, Your Honor. Okay, thank you. In conclusion, we ask the Court to deny the petition for review. Thank you. Your Honor, the first time that Mr. Ortiz became aware of the fact that he could have sought judicial review was at the end of 2003, in the second re-entry. Is that because of ineffectiveness of counsel, or just because he didn't become aware of it? Because of ineffectiveness of counsel. His immigration counsel, first of all, had failed to advise him of the Board's decision. When he became aware of it was when he had checked in with the Immigration Service and they said, you lost five months ago. We're going to deport you tomorrow. His wife called his attorney, and the attorney said, sorry, there's nothing you can do. So this was when? That was in 1998. That was the right answer in 1998, wasn't it? No, he could have filed a habeas in 1998 and challenged it that way. He said when? This was before St. Cyr. I mean, he was not eligible for 2012 serial leave as of that time. That was the law. It wasn't until three years later that the Supreme Court came down to St. Cyr and said, well, if you're guilty, then based on an understanding that you'll be entitled to this relief, it can be applied right away. That was three years in the future. There was nothing ineffective about telling him in 1998, tough luck. I think it was an effective garner to say that there's no further recourse. You can't challenge this any further. What would a competent counsel have done? He could have at least said the board has ruled this way, the attorney general has ruled this way, there is a way to challenge it in federal court. Say what? You go to court, you could file a petition for a review, and say what? That the board was wrong. How was it wrong? Retroactive application violated the process. To raise the St. Cyr argument ahead of the decision by the Supreme Court, you have to anticipate that argument, and that certainly would have been a brilliant move, but that's not the standard for competent counsel. Anticipating future Supreme Court decisions is not, arguments in future Supreme Court decisions, certainly not the test for competency of counsel. I think competent counsel has to inform its client if there's judicial review available, especially where there's a law that's uncertain as far as the outcome. Has your client followed those orders? Yes, Your Honor. And he raised it in the second reentry case, once he became aware, the first attorney that was appointed. He raised it again in the criminal case, which is now an appeal hearing. Yes, Your Honor. That is actually before this court on habeas proceedings right now, that issue, whether the attorney was ineffective or not. All right. Thank you, Judge.  Next case on the calendar for argument is United States v. Woods. Thank you, Your Honor.
judges: Reinhardt, Kozinski, Ikuta